# JUDGE CEDARBAUM

# 07 CV 5838

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------ X

CYRILLE TINKER,                          :

        Plaintiff,                       :

  -against-                              :

JOHNSON & JOHNSON, JOHNSON &            :   CASE NO. _____
JOHNSON PHARMACEUTICAL
RESEARCH & DEVELOPMENT, L.L.C.,          :
ALZA CORPORATION, ORTHO-McNEIL
PHARMACEUTICAL, INC., and DOES 1        :   **NOTICE OF REMOVAL**
through 100,
                                         :
       Defendants.
                                         :

                                         :        JUN 2 0 2007

                                        ‘:
------------------------------------------ X

      PLEASE TAKE NOTICE that defendants Johnson & Johnson, Johnson & Johnson

Pharmaceutical Research & Development, L.L.C., Alza Corporation and Ortho-McNeil

Pharmaceutical, Inc. (collectively, "Defendants") hereby remove this action pursuant to 28

U.S.C. §§ 1332, 1441, and 1446 from the Supreme Court of the State of New York, New York

County, to the United States District Court for the Southern District of New York and

respectfully state to this Court the following:

      1.    This action involves allegations regarding the prescription contraceptive drug

Ortho Evra®. On March 1, 2006, the Judicial Panel on Multidistrict Litigation issued an order

transferring Ortho Evra® products liability cases to the United States District Court for the

Northern District of Ohio (Katz, J.) for coordinated pretrial proceedings under 28 U.S.C. § 1407.

Defendants intend to seek the transfer of this action to that Multidistrict Litigation, *In re Ortho

Evra Products Liability Litigation*, MDL No. 1742, and will shortly provide to the MDL Panel

notice of this action pursuant to the "tag-along" procedure contained in the MDL Rules.

2.      Plaintiff Cyrille Tinker ("Plaintiff") filed this civil action against Defendants in the Supreme Court of the State of New York, New York County, bearing Index Number 07107410 on May 25, 2007. Defendants were served with the complaint on May 31, 2007. A true and correct copy of the Summons and Complaint is attached hereto as Exhibit A.

3.      Plaintiff asserts a claim for damages allegedly arising out of her use of the prescription contraceptive patch, Ortho Evra®. Plaintiff alleges "severe, permanent and debilitating personal injuries including stroke, blood clots, and paralysis." She demands compensatory and punitive damages for "medical expenses from hospitals, physicians, surgeons, at-home care, and incidental expenses," as well as "sustained, physical pain and suffering and mental anguish damages in the past and future, as well as loss of earnings, past, present, and future, and a loss of earning capacity." (See Ex. A, Complaint, ¶¶ 48, 49, 56.) Plaintiff alleges that she "suffered a debilitating stroke and a deep vein thrombosis," resulting in "paralysis and... a vena cath." (See Ex. A, Complaint, ¶ 37.) Plaintiff's claims are based on theories of strict liability, defective marketing and failure to warn, negligence, and breach of warranty. Plaintiff seeks punitive damages. (See Ex. A, Complaint at 14.)

4.      As more fully set out below, this case is properly removed to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 because Defendants have (1) satisfied the procedural requirements for removal and (2) this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

## I.    DEFENDANTS HAVE SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.

5.      Plaintiff's Complaint ("Complaint") was filed on May 25, 2007. Defendants were served with the Complaint on May 31, 2007. Accordingly, this Notice of Removal is timely

filed pursuant to 28 U.S.C. § 1441. Venue is proper in this Court pursuant to 28 U.S.C. § 89 (c)

because it is the "district and division embracing the place where such action is pending." *See* 28

U.S.C. § 1441(a).

      6.     All defendants consent to this removal.

      7.     No previous application has been made for the relief requested herein.

      8.     Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served

upon counsel for Plaintiff and a copy is being filed with the Clerk of the Court for the Supreme

Court of the State of New York, New York County.

## II.    REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.

      9.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because

this is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of

costs and interest and is between citizens of different states.

### A.    <u>Complete Diversity Of Citizenship</u>

      10.    There is complete diversity between Plaintiff, a citizen of New York,[1] and

defendants, citizens of New Jersey, Delaware, and California the only parties to this action.[2]

      11.    Upon information and belief, Plaintiff is and was at the time she commenced this

action a citizen of the State of New York.

---

[1] Plaintiff alleges that she currently resides in the State of New York, City of New York, and County of New York. (Compl., ¶ 1). Plaintiff alleges no other alternative state of residence. Accordingly, New York is the state in which Plaintiff is domiciled and, therefore, the state of which she is a citizen. *See* 28 U.S.C. § 1332(a); *see also Linardos v. Fortuna*, 157 F.3d 945, 946 (2d Cir. 1998) ("[f]or purposes of diversity jurisdiction, a party's citizenship depends on her domicile.").

[2] While Defendants John Doe 1 through John Doe 75 are also named in the caption to Plaintiff's Complaint, the Complaint contains no allegations concerning them and their domicile is unknown. The removal statute instructs, "For the purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(a). Accordingly, their presence in the caption is disregarded for the purposes of this Notice of Removal.

12.     Johnson & Johnson is, and was at the time Plaintiff commenced this action, a corporation organized under the laws of the State of New Jersey, with its principal place of business in New Brunswick, New Jersey and, therefore, is a citizen of New Jersey for purposes determining diversity.  28 U.S.C. § 1332(c)(1).

13.     Johnson & Johnson Pharmaceutical Research & Development, L.L.C. is a limited liability company organized under the laws of the State of New Jersey, with its principal place of business in Raritan, New Jersey, and, therefore, is a citizen of New Jersey for purposes of determining diversity.  28 U.S.C. § 1332(c)(1).

14.     Alza Corporation is, and was at the time Plaintiff commenced this action, a corporation organized under the laws of the State of Delaware, with its principal place of business in Mountain View, California and, therefore, is a citizen of Delaware and California for purposes of determining diversity.  28 U.S.C. § 1332(c)(1).

15.     Ortho-McNeil Pharmaceutical, Inc. is, and was at the time Plaintiff commenced this action, a corporation organized under the laws of the State of Delaware, with its principal place of business in Raritan, New Jersey and, therefore, is a citizen of Delaware and New Jersey for purposes determining diversity.  28 U.S.C. § 1332(c)(1).

B.     **The Amount In Controversy Requirement Is Satisfied.**

16.     The Complaint alleges that Plaintiff suffered personal injuries due to her use of the Ortho Evra® patch, including "Plaintiff alleges "severe, permanent and debilitating personal injuries including stoke, blood clots, and paralysis." (See Ex. A, Complaint, ¶¶ 48, 56.) "suffered a debilitating stroke and a deep vein thrombosis," resulting in "paralysis and… a vena cath." (See Ex. A, Complaint, ¶ 37.)

17.     Plaintiff demands a judgment against Defendants for compensatory damages for

"medical expenses from hospitals, physicians, surgeons, at-home care, and incidental expenses," as well as "sustained, physical pain and suffering and mental anguish damages in the past and future, as well as loss of earnings, past, present, and future, and a loss of earning capacity." (See Ex. A, Complaint, ¶¶ 49, 56.) She also demands punitive damages. (See Ex. A, Complaint at 14.) In a products liability action involving allegations of injury due to use of a defective pharmaceutical, in which injuries of this sort are alleged and punitive damages are sought, there is no genuine issue that the amount in controversy exceeds $75,000, exclusive of interest and costs.

18.    While Defendants deny liability for any of Plaintiff's damages in this action, a reasonable reading of the Complaint demonstrates that the amount in controversy exceeds $75,000, exclusive of interest and costs.

WHEREFORE, Defendants respectfully remove this action from the Supreme Court of the State of New York, New York County, pursuant to 28 U.S.C. § 1441.

Dated: New York, New York.
       June 20, 2007

Respectfully submitted,

DECHERT LLP

By: _Patrick G. Broderick_ _____

   Robert W. Sparks (RS 4250)
   Debra D. O'Gorman (DO 1643)
   Patrick G. Broderick (PB 9556)

30 Rockefeller Plaza
New York, NY  10112-2200
(212) 698-3500

Attorneys for Defendants Johnson & Johnson,
Johnson & Johnson Pharmaceutical Research
and Development, L.L.C., Alza Corporation and
Ortho-McNeil Pharmaceutical, Inc.

Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------X

CYRILLE TINKER,

                Plaintiff,

          -against-

JOHNSON & JOHNSON, JOHNSON
& JOHNSON PHARMACEUTICAL
RESEARCH & DEVELOPMENT, LLC
ALZA CORPORATION; ORTHO-MCNEIL
PHARMACEUTICAL, INC., and DOES
1 through 100.

                   Defendants,
------------------------------------------------X

Index Number: 07107410

Date Filed:

Plaintiff designates New York
County as the place of

The basis of the venue is
Plaintiff's residence at
528 West 145 Street
New York, New York 10031

**SUMMONS**

FILED
MAY 25 2007
NEW YORK

To the above named Defendants:

      **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to
serve a copy of your answer, or, if the complaint is not served with this summons, to serve a
notice of appearance, on the Plaintiff's attorneys LAW OFFICES OF JOSEPH M.
LICHTENSTEIN, P.C. within 20 days after the service of this summons, exclusive of the day
of service (or within 30 days after the service is complete if the summons is not personally
delivered to you within the State of New York); and in the case of your failure to appear or
answer, judgment will be taken against you by default for the relief demanded in the
complaint.

Dated: Mineola, New York
       May 24, 2007

                       Yours, etc.,

                       LAW OFFICES OF JOSEPH
                       M. LICHTENSTEIN, P.C.
                       *Attorneys for Plaintiff*
                       170 Old Country Road, Suite 301
                       Mineola, New York 11501
                       (516) 873-6300

TO: Johnson & Johnson
One Johnson & Johnson Plaza
New Brunswick, New Jersey 08933

Johnson & Johnson Pharmaceutical Research
& Development, L. L.C.
920 Route 202 South
P.O. Box 300
Mail Stop 2628
Raritan, New Jersey 08869

ALZA CORPORATION
1900 Charleston Road
Mountain View, California 94043

ORTHO-MCNEIL PHARMACEUTICAL, INC.
1000 Route 202 South
P.O. Box 300
Raritan, New Jersey 08869

**NEW YORK STATE SUPREME COURT**
**COUNTY OF NEW YORK**
------------------------------------------------------------X.

CYRILLE TINKER,

                          Plaintiff,                          **VERIFIED COMPLAINT**

                                                             Index No.:
        -against-                                            Date Purchased:

JOHNSON & JOHNSON, JOHNSON
& JOHNSON PHARMACEUTICAL
RESEARCH & DEVELOPMENT, LLC
ALZA CORPORATION; ORTHO-MCNEIL
PHARMACEUTICAL, INC.,and DOES
1 through 100.
                          Defendants.
------------------------------------------------------------X.

1.      Plaintiff is an individual who at all relevant times has resided at 528 West

145th Street,  New York, New York 10031; County of New York, State of New York.

## I.  NATURE OF THE ACTION

2.      The Plaintiff was injured from using the Ortho Evra contraceptive patch

(hereinafter "Ortho Evra," the "Ortho Evra patch," or the "Patch").  The Plaintiff experienced

blood clots and stroke that led to substantial physical injuries, past and future medical

expenses, loss of earnings, lost earning capacity, and pain and suffering damages.  Plaintiff

seeks actual and punitive damages from the Defendants due to her injuries caused by Ortho

Evra.  Plaintiff's injuries are alleged to have occurred from the period of time from 2003

through and including June, 2004.

3.      As is more fully set forth below, Defendants negligently designed,

1

manufactured, marketed, advertised, and sold Ortho Evra by misrepresenting its safety, and failing to adequately warn of its risks.

## II. DEFENDANTS

4.     Defendant Johnson & Johnson ("J&J") is a New Jersey corporation with its principle place of business at One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933. J&J can be served with process in this cause through hand delivery of the summons and complaint through its registered agent, CT Corporation System, 1635 Market Street, Philadelphia, PA 19103.

5.     Defendant Johnson & Johnson Pharmaceutical Research & Development, L.L.C. ("J&JPRD") is a New Jersey corporation with its principal place of business at 920 Route 202 South, P.O. Box 300, Mail Stop 2628, Raritan, New Jersey 08869.  J&JPRD can be served in this cause through hand delivery of the summons and complaint through its registered agent, CT Corporation System, 1625 Market Street, Philadelphia, PA 19103.

6.     Defendant ALZA Corporation ("ALZA") is a Delaware corporation with its principal place of business at 1900 Charleston Road, Mountain View, California 94043. ALZA can be served in this cause through hand delivery of the summons and complaint through its registered agent, CT Corporation System, 818 West 7th Street, Los Angeles, CA 90017.

7.     Defendant Ortho-McNeil Pharmaceutical, Inc. ("Ortho-McNeil"), is a New Jersey corporation with its principal place of business at 1000 Route 202 South, P.O. Box 300, Raritan, New Jersey 08869. Ortho-McNeil can be served in this cause through hand delivery of the summons and complaint through its registered agent, CT Corporation System, 1635

2

Market Street, Philadelphia, Pa 19103.

8.    Plaintiff does not know the true names and capacities of those defendants named and sued herein as Does 1 through 50, and for that reason have sued said defendants by such fictitious names.  Plaintiffs will seek leave to amend this complaint to reflect their true names when ascertained.  Plaintiffs are informed and believe, and accordingly allege, that each of the defendants sued herein as Does 1 through 50 is responsible in some manner for the occurrences alleged in this action and that these defendants proximately caused the harms suffered by plaintiffs.

9.    Plaintiff is further informed and believes, and accordingly alleges, that at all relevant times each of the Defendants was the employer, employee, agent, servant, alter ego, principal, or subsidiary of the other defendants and at all times acted within the course and scope of such employment or agency or in concert and as agents and alter egos of each other with the knowledge, approval and ratification of said co-defendants.

## III. JURISDICTION

10.    J&J, J&JPRD, ALZA, and Ortho-McNeil (collectively referred to as "Defendants") are subject to the personal jurisdiction of this court because, among other things, upon information and belief, each of the defendants has transacted and is presently transacting business in the State of New York by: (a) selling and marketing pharmaceuticals, including Ortho Evra, to New York residents; (b) maintaining offices in the State of New York; and/or (c) committing tortious acts in the State of New York.

11.    All Ortho Evra patches sold in the United States from October 16, 2002 to the present were manufactured by ALZA.  In addition to manufacturing all United States

3

patches, ALZA assisted in the design of the Patch, and participated in making strategic marketing decisions. Also, ALZA performed various quality control functions relating to the manufacturing and sale of Ortho Evra. For example, ALZA investigated the cause of variations in the amount of ethinyl estradiol, the estrogen component in the Ortho Evra patch. ALZA also developed protocols for and performed research on the patches that it manufactured to determine whether the Patches met specifications.

### IV. FACTUAL ALLEGATIONS

12.    Upon information and belief, at all times relevant hereto, each of the Defendants, by and through their employees, agents, affiliates, subsidiaries, and representatives, were involved in developing, designing, testing, manufacturing, and/or marketing the Patch. J&J and its subsidiaries, Ortho-McNeil and J&JPRD initially sought approval of the Patch from the Food and Drug Administration ("FDA") in December 2000, and approval was granted in November 2001. In October 2002, ALZA became the sole manufacturer for Ortho Evra patches sold in the United States. All four defendants are part of the Johnson & Johnson corporate family.

13.    The Patch, which is available by prescription only, was first made available to American women in April 2002.

14.    Since that time, it has been heavily marketed by J&J and Ortho-McNeil.

15.    The introduction of Ortho Evra in April 2002 closely coincided with, and was obviously intended to offset, the timing of Orth-McNeil's best-selling oral contraceptive, Ortho Tri-Cyclen, going off patent and being subject to competition from generic contraceptive pills. Even before Ortho Evra's launch, Ortho-McNeil projected billions of

4

dollars in sales.

16.    Defendants' Phase III clinical trials, which were conducted by Defendants before the Patch went on the market, consisted of about 3,000 women, or 1,706 woman-years. This study showed that the Patch caused or contributed to two major cases of pulmonary embolism and four other venous thrombotic injuries.

17.    If only the two cases of pulmonary embolism are used to compute the incidence of venous thromboembolism, as included in the FDA's New Drug Application medical review for Ortho Evra, this represents at least six times the clotting rate historically attributed to a widely used class of oral contraceptives using the hormone levonorgestrel. In other words, an extremely generous interpretation of Defendants' own studies showed that the Patch causes at least six times more serious blood clots than a widely used class of oral contraceptives.

18.    Therefore, that class of oral contraceptives which uses the hormone levonorgestrel constitutes a safer alternative contraception design.

19.    The FDA approved the Patch, but did so with express misgivings. For example, in the Medical Review for Ortho Evra (New Drug Application 21-180), the FDA stated its concerns about the drug causing venous thromboembolisms:

"Post-marketing surveillance for DVT [Deep Venous Thrombosis] and PE [Pulmonary Embolism] events will be important, as there are potential serious adverse risks (with two cases of pulmonary emboli in the clinical trails) with this new delivery system for contraception..."

20.    After the approval by the FDA, J&J and Ortho-McNeil geared up a massive

marketing effort for the Patch. Since 2002, they have spent millions of dollars on advertising and marketing Ortho Evra directly to women through television and print advertisements.

21.    In addition to the direct-to-consumer advertising, Defendants spent millions more marketing the Patch to physicians and health care providers by sending sales representatives, brochures, and other marketing devices to entice physicians and health care providers to prescribe Ortho Evra.

22.    The marketing and advertising effort by J&J and Ortho-McNeil downplayed the safety risks of the drug to both health care providers and patients. J&J and Ortho-McNeil elected to imply on the Patch's package insert warning label that the clotting risk of the Patch is equivalent to that of oral contraceptives.

23.    The fine print of the Patch's package insert contains mixed messages on the equivalency of the risks of the Patch to those of oral contraceptives.

    (a) At one point, when comparing the Patch to oral contraceptives, the insert says "the contraceptive Patch is expected to be associated with similar risks..."

    (b) Yet, at another location, the package insert states that "it is unknown if the risk of venous thromboembolism with Ortho Evra use is different than with use of combination oral contraceptives."

24.    The statement from the package insert quoted in paragraph 33(b) above is actually contradicted by J&JPRD's own clinical studies represented by Phase III trials, which, as stated above, showed a clotting rate at least six times higher than that of levonorgestrel oral contraceptives.

25.    The package insert also contains statements that the Defendants knew to be

6

misleading, such as "there is no epidemiological data available to determine whether the safety and efficacy with the transdermal route of administration would be different than the oral route." In this statement, Defendants imply that there is no data available to determine whether the Patch is safer than the pill. Defendants fail to mention the Phase III clinical studies, showing that the Patch, a transdermally-administered drug, caused a clotting rate at least six times higher than levonorgestrel-based oral contraceptives.

26. Since the Patch hit the market in April 2002, the number of adverse events reported to the Defendants has been staggering. For the time period April 2002 to December 2004, 27,974 adverse events due to Patch usage have been reported to Defendants.

27. By way of comparison, Ortho Tri-Cyclen, an oral contraceptive manufactured by the Defendants, only generated 5,571 adverse event reports during the same time period even though its usage was over three-times greater than the Patch.

28. Even more striking, Ortho Tri-Cyclen Lo, a low-dose oral contraceptive manufactured by Defendants only generated 2,198 reports during the same time period despite usage slightly less than the Patch.

29. Based on public information, post-marketing surveillance by Defendants has revealed that thromboembolic injuries from the Patch are being reported at a rate over 14 times higher than that of Ortho Tri-Cyclen during the time period April 2002 through December 2004, taking into account differences in exposure, and at a rate over 17.5 times higher than Ortho Tri-Cyclen Lo during the same time period, also taking into account differences in total exposure.

30. The Plaintiff was also exposed to direct to consumer advertisements that failed

7

to adequately warn of the significant risk of blood clots. These ubiquitous consumer advertisements did not communicate the actual risks associated with Ortho Evra in that they failed to warn that the risk of blood clots from the use of the Patch was higher than the risk associated with use of oral contraceptives.

31.    The Plaintiff's health care providers were exposed to the same type of advertising by the Defendants. The various sales messages sent to health care providers failed to warn that the Patch carried a higher risk of blood clots than oral contraceptives, and actually implied that the Patch carried the same risk as a pill.

32.    Defendants, which have hundreds of millions of dollars invested in this product, continue to aggressively market the Patch to health care providers and women of all ages, and continue to imply that the risks of the Patch are the same as those of the pill (stating "the Patch does have hormones like the Pill...").

33.    In November 2005, Ortho-McNeil and the FDA announced a new label change for the Patch. The new label states "**You will be exposed to about 60% more estrogen if you use ORTH EVRA than if you use a typical birth control pill containing 35 micrograms of estrogen.**"

34.    Although the label was just changed last month, the change was based on information that the Defendants have known since the summer of 2003. At that time, the Defendants completed a study which showed that the estrogen levels generated in Patch user was 60% higher than the estrogen levels in users of a 35 µg pill.

35.    Defendants waited several months before presenting these results to the FDA, and they waited approximately two and a half years to share this information with health

8

care providers and their patients.

36.     If the Defendants had shared this information with health care providers and their patients in the summer of 2003, when they originally knew of the high estrogen dose, the Plaintiff's injuries could have been avoided.  Knowing the risks that a high-level estrogen contraceptive carries, the Plaintiff would have refused to use the Patch and/or her doctors would have refused to prescribe it.

37.     Plaintiff Cyrille Tinker, 37 years old, suffered a debilitating stroke and a deep vein thrombosis in June 2004, approximately 1 year after she began using the Patch.  She had previously used other forms of hormonal contraceptives with no history of stroke or blood clots.  As a result of the stroke and blood clots, Plaintiff has paralysis and has required a vena cath.

## V.  FIRST CAUSE OF ACTION:

## STRICT LIABILITY/ DEFECTIVE MARKETING & FAILURE TO WARN

38.     The plaintiff repeats and re-alleges the allegations set forth above as though fully stated herein.

39.     The Patch is defective because it does not sufficiently warn of the likelihood of strokes and blood clots or the potential fatal or life-threatening consequences of such strokes and blood clots, or as to the increased risk of such consequences over oral contraceptives.  The warnings are defective in that they do not mention the increased risk of stroke and blood clots as opposed to other forms of contraception.  In fact, in marketing the Patch to health care providers, Defendants strongly imply that the risk of stroke and blood clots is the same for

9

users of the Patch as it is for oral contraceptives, when in fact the risk is much greater.

40.     In addition, Defendants failed to warn physicians and health care providers that the known risks of stroke and blood clots with the Patch are at least six times higher than the known risks of stroke and blood clots attributed to oral contraceptives. Furthermore, Defendants withheld or misrepresented or failed to properly submit required material information to the FDA concerning the Patch before and after approval.

41.     The staggering number of adverse events reported to Defendants since Ortho Evra left the Defendants' control also mandated that the original warnings be supplemented or modified to protect consumers. Defendants' failure to supplement or modify the original warning in its labels and its marketing left health care providers unable to perceive the actual risk of using the Patch.

42.     The inadequacy of the Patch's original warning is emphasized by the recent FDA-mandated label changed, which informs health-care providers that the Patch contains sixty percent more estrogen than the pill.

43.     The risk of the Patch was actually known by the Defendants or was reasonably scientifically knowable at the time the Patches that injured the Plaintiff were manufactured, distributed, and sold. Although the label change was not made until October 2005, the Defendants had information available to them in summer 2003 that confirmed that the Patch contains 60% more estrogen than a 35 µg oral contraceptive. Even before that time, based on its own Phase III clinical studies, Defendants were aware that Ortho Evra carried an increased risk of thromboembolism.

44.     The lack of sufficient warnings was a substantial factor in causing the Plaintiff's

injuries and damages in an amount in excess of the minimum jurisdictional limits of this

Court. If Defendants had informed the Plaintiff or her health care providers of the known

risks of the Patch, the Plaintiff would have refused to use Ortho Evra and/or her health care

provider would have refused to prescribe it.

## VI.SECOND CAUSE OF ACTION:

### NEGLIGENCE

45.    Each Plaintiff repeats and re-alleges the allegations set forth above as though
fully stated herein.

46.    Defendants were negligent in marketing Ortho Evra and such negligence was a
proximate cause of injuries and damages to the Plaintiff. Defendants, through their agents,
employees and/or servants, designed, manufactured, produced, inspected, tested,
maintained, sold and/or made available Ortho Evra tothe Plaintiff. The Plaintiff suffered
personal injuries from the Patch caused by negligence of the Defendants. The negligence on
the part of the defendants included, but was not limited to: marketing and making available
Ortho Evra to the Plaintiff even though it was a dangerous, defective and deficient drug; and
failing to provide each the Plaintiff's health-care providers' sufficient information as to the
product's known dangers and risks.

47.    Defendants were negligent in designing Ortho Evra and such negligence was a
proximate cause of injuries and damages to the Plaintiff. Defendants, through their agents,
employees and/or servants, designed, manufactured, produced, inspected, tested,
maintained, sold and/or made available Ortho Evra to the Plaintiff. The Plaintiff suffered
personal injuries from the Patch caused by the negligence of the defendants. The negligence

11

on the part of the Defendants included, but was not limited to: failing to conduct sufficient,

reasonable, adequate, comprehensive research and tests of Ortho Evra prior to making it

available to the American public and Plaintiff; and failing to recognize and correct defect that

was known, or reasonably knowable, to the Defendants prior to making it available to the

Plaintiff.

48.    As a consequence of Defendants' negligence, careless conduct, and their failure

to exercise ordinary and reasonable care and caution, the Plaintiff has suffered severe,

permanent and debilitating personal injuries including, stroke, blood clots, and paralysis.

49.    As a direct and proximate result of the Defendants' negligence, the Plaintiff has

sustained medical expenses from hospitals, physicians, surgeons, at-home care, and incidental

expenses, and the Plaintiff will necessarily incur additional such expenses for an indefinite

period of time in the future. The Plaintiff has also sustained physical pain and suffering and

mental anguish damages in the past and future, as well as a loss of earnings, past, present,

and future, and a loss of earning capacity.

## VII. THIRD CAUSE OF ACTION:

## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

50.    The Plaintiff repeats and re-alleges the allegations set forth above as though

fully stated herein.

51.    The Plaintiff purchased the Patch for a particular purpose, i.e., safe

contraception.

52.    At the time of the sale, Defendants knew or had reason to know the particular

12

purpose for which the Plaintiff would use the Patch.

53.    Defendants knew or had reason to know that the Plaintiff and her physicians relied upon the skill and judgment of the Defendants as leaders in the pharmaceutical industry to create, market, test, and sell a suitable and safe hormonal contraceptive.

54.    Defendants, through their agents, employees, subsidiaries, representatives and affiliates warranted that the Patch was suitable for the particular purpose for which it was utilized by the Plaintiff.

55.    At the time it was manufactured and at all subsequent times, the Patch was not as warranted, but was unfit for the particular purpose for which it was intended in that it was defective, causing the Plaintiff to suffer damages and consequential damages in an amount in excess of the minimum jurisdictional limits of the Court that are more fully set forth herein.

56.    As a direct and proximate cause of the Defendants' breach of the implied warranty of fitness for a particular purpose and the resulting dangers associated with the use of the Patch, the Plaintiff sustained medical expenses from hospitals, physicians, surgeons, at-home care, and incidental expenses, and Plaintiff will necessarily incur additional such expenses for an indefinite period of time in the future. The Plaintiff also sustained physical pain and suffering and mental anguish damages in the past and future, as well as a loss of earnings, past, present, and future, and a loss of earning capacity.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment against Defendants, and each of them, and requests the following relief:

1.    Compensatory damages to Plaintiff for past and future damages, including, but

13

not limited to, pain and suffering for severe and permanent personal injuries sustained by Plaintiff, healthcare costs, medical monitoring, together with interest and costs as provided by law;

2.          Punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless, and indifferent acts of Defendants, who demonstrated a complete disregard and reckless indifference for the safety and welfare of the public, and of plaintiff, in an amount sufficient to punish Defendants, and deter future conduct, together with interest, according to proof;

3.    Awarding Plaintiff reasonable attorneys' fees;

4.    Awarding Plaintiff the costs of these proceedings; and

5.    Such other and further relief as this Court deems just and proper.

Dated:    May 24, 2007
          Minela, New York


_____
          Elliot L. Lewis, Esq.
LAW OFFICE OF JOSEPH M. LICHTENSTEIN, P.C.
*Attorneys for Plaintiff(s)*
170 Old Country Road, Ste. 301
Mineola, New York 11501
Tel. (516) 873-6300

14

## ATTORNEY'S CERTIFICATION

Pursuant to Section 130-1.1-a of the Rules of the Chief Administrator (22 NYCRR) the within **SUMMONS & COMPLAINT TO CPLR 3101(d)** is certified to the best of the undersigned knowledge, information and belief, formed after an inquiry reasonable under the circumstances. The presentations of the papers or the contentions therein are not frivolous as defined in subsection (c) of section 130-1.1.

Dated: Mineola, New York
      May 24, 2007

ELLIOT L. LEWIS, ESQ.

## ATTORNEY'S VERIFICATION

Elliot I. Lewis, an attorney duly admitted to practice law before the Courts of the State of New York, affirms the truth of the following under penalties of perjury; I am a member of The law offices of Joseph M. Lichtenstein, P.C. attorneys of record for CYRILLE TINKER in the within action; I have read the foregoing **VERIFIED SUMMONS AND COMPLAINT**, and know the contents thereof; the same is true to my own knowledge except as to those matters said to be upon information and belief and as to those matters I believe them to be true.

This affirmation is submitted by the undersigned because the plaintiff is not in the county where our office is maintained.

Dated: May 24, 2007

_____

ELLIOT L. LEWIS, ESQ.

LAW OFFICES OF

JOSEPH M. LICHTENSTEIN, P.C.

---

Index No.                    Year

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

CYRILLE TINKER,

Plaintiff,

-against-

JOHNSON & JOHNSON, JOHNSON & JOHNSON
PHARMACEUTICAL RESEARCH & DEVELOPMENT, LLC, ALZA
CORPORATION; ORTHO-MCNEIL PHARMACEUTICAL, INC.,
and DOES 1 through 100.

Defendants

---

# SUMMONS & VERIFIED COMPLAINT

LAW OFFICES OF

JOSEPH M. LICHTENSTEIN, P.C.

Attorneys for Plaintiffs

Office and Post Office Address
170 Old Country Road
Suite 301
MINEOLA, NEW YORK 11501-4316
(516) 873-6300

MAY 25 2007

NEW YORK
COUNTY CLERK'S OFFICE

07107410

To

Attorney(s) for Defendant

Service of a copy of the within                    is hereby admitted.

---

NOTICE OF ENTRY
that the within is a (certified) true copy
the office of the clerk of the within

LAW OFFICES
L. LICHTENSTEIN, P.C.
Attorneys for Plaintiff

r and Post Office Address
70 Old Country Road
Suite 301
A, NEW YORK 11501-4316
(516) 873-6300

NOTICE OF SETTLEMENT
e that an order
is a true copy will be presented for
n.
the within named Court at

20

M.

LAW OFFICES OF
L. LICHTENSTEIN, P.C.
Attorneys for Plaintiff

r and Post Office Address
70 Old Country Road
Suite 301
A, NEW YORK 11501-4316
(516) 873-6300

## CERTIFICATE OF SERVICE

Patrick G. Broderick, an attorney admitted to practice before this Court, hereby affirms under penalty of perjury that on June 20, 2007, I caused a true and correct copy of the foregoing Notice of Removal to be served via overnight delivery upon:

> Elliott L. Lewis
> Law Office of Joseph M. Lichtenstein, PC
> 170 Old Country Road, Suite 301
> Mineola, NY 11501
>
> ATTORNEYS FOR PLAINTIFF

Dated: New York, NY
      June 20, 2007

Patrick G. Broderick (PB 9556)